UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOSEPH REILLY and DORIS REILLY,

     Plaintiffs,

v.                                Case No. 8:12-cv-2604-T-33EAJ

LIBERTY MUTUAL FIRE INSURANCE
COMPANY,

     Defendant.
_____/

**ORDER**

This matter comes before the Court pursuant to Defendant Liberty Mutual Fire Insurance Company's Motion for Summary Judgment (Doc. # 27), which was filed on June 3, 2013. Plaintiffs Joseph and Doris Reilly filed their Response in Opposition to the Motion (Doc. # 30) on July 9, 2013. For the reasons that follow, the Motion is denied.

## I. Background

The Reillys purchased a homeowners' insurance policy from Liberty Mutual with an effective period of February 27, 2011, through February 27, 2012, to cover their residence located in Spring Hill, Florida. (Doc. # 1 at ¶¶ 2-3). During the effective period of the Policy, the Reillys discovered damage to their residence, and they contend that the damage was caused by sinkhole activity. (Id. at ¶ 7). The Policy provides coverage for sinkhole loss as follows:

**SECTION 1 - PERILS INSURED AGAINST**
The following perils are added:
**Sinkhole Loss**
a.    Sinkhole Loss means structural damage to the building, including the foundation, caused by sinkhole activity.  Contents coverage shall apply only if there is structural damage to the building caused by sinkhole activity.
   (1)  We will pay to stabilize the land and building and repair the foundation in accordance with the recommendations of a professional engineer and in consultation with you.
b.    Sinkhole   Activity   means   settlement   or systematic weakening of the earth supporting such property only when such settlement or systematic weakening results from movement or raveling   of   soils,   sediments,   or   rock materials into subterranean voids created by the effect of water on limestone or similar rock formation.
The SECTION 1 - Earth Movement exclusion does not apply to this peril.

(Doc. # 1-1 at 38).

The Reillys filed a claim for insurance coverage with Liberty Mutual, and Liberty Mutual denied the claim. The Reillys accordingly filed an action for breach of their insurance contract against Liberty Mutual on November 16, 2012. (Doc. # 1). The Reillys filed an Amended Complaint (Doc. # 18) to clarify their jurisdictional allegations on January 24, 2013.   Liberty Mutual filed its Answer, Affirmative Defenses, and Counterclaim for declaratory judgment on January 28, 2013. (Doc. # 20). The Reillys filed a reply (Doc. # 21) on February 6, 2013.

2

On June 3, 2013, Liberty Mutual filed its Motion for Summary Judgment on its Counterclaim. (Doc. # 27). Therein, Liberty Mutual requests that the Court apply the May 17, 2011, Amendments to the Florida statutory scheme regulating sinkhole insurance, which added a statutory definition of "structural damage." Ostensibly, Liberty Mutual does not request summary judgment on the merits of the Reillys' Amended Complaint, nor does Liberty Mutual request a ruling regarding whether coverage is available under the Policy. After due consideration, the Court determines that summary judgment is not warranted on the narrow issue presented.

## II.   Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law.

3

Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).

The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor.  See Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006).  The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  Id.  When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial.  Id.

III. **Analysis**

In 1981, the Florida Legislature adopted a statutory provision requiring insurers to offer coverage for sinkhole losses.  As originally enacted, this statutory provision provided:

> (1) Every insurer authorized to transact property insurance in this state shall make available coverage for insurable sinkhole losses on any structure, including contents of personal property contained therein, to the extent provided in the form to which the sinkhole coverage attaches.

(2) "Loss" means structural damage to the building.  Contents coverage shall apply only if there is structural damage to the building.

(3) "Sinkhole loss" means actual physical damage to the property covered arising out of or caused by sudden settlement or collapse of the earth supporting such property only when such settlement or collapse results from subterranean voids created by the action of water on a limestone or similar rock formation.

Fla. Stat. § 627.706(1981).

In 2005, the Florida Legislature redefined "sinkhole loss" as "structural damage to the building, including the foundation, caused by sinkhole activity." Bay Farms Corp v. Great Am. Alliance Ins. Co., 835 F. Supp. 2d 1227, 1230-33 (M.D. Fla. 2011).  The 2005 version of the statute included new defined terms, but did not define "structural damage." Id.

In 2011, the Florida Legislature for the first time defined "structural damage" to be applied when interpreting insurance policies providing sinkhole insurance coverage. That amendment went into effect on May 17, 2011.  As amended, Fla. Stat. § 627.706 provides:

(j) "Sinkhole loss" means structural damage to the covered building, including the foundation, caused by sinkhole activity.  Contents coverage and additional living expenses apply only if there is structural damage to the covered building caused by sinkhole activity.

5

(k)  "Structural damage" means a covered building,
     regardless of the date of its construction,
     has experienced the following:
     1.   Interior floor displacement or deflection
          in excess of acceptable variances as
          defined in ACI 117-90 or the Florida
          Building Code, which results in
          settlement-related damage to the interior
          such that the interior building structure
          or members become unfit for service or
          represents a safety hazard as defined
          within the Florida Building Code;
     2.   Foundation displacement or deflection in
          excess of acceptable variances as defined
          in ACI 318-95 or the Florida Building
          Code, which results in settlement-related
          damage to the primary structural members
          or primary structural systems that
          prevents those members or systems from
          supporting the loads and forces they were
          designed to support to the extent that
          stresses in those primary structural
          members or primary structural systems
          exceeds one and one-third the nominal
          strength allowed under the Florida
          Building Code for new buildings of
          similar structure, purpose, or location;
     3.   Damage that results in listing, leaning,
          or buckling of the exterior load-bearing
          walls or other vertical primary
          structural members to such an extent that
          a plumb line passing through the center
          of gravity does not fall inside the
          middle one-third of the base as defined
          within the Florida Building Code;
     4.   Damage that results in the building, or
          any portion of the building containing
          primary structural members or primary
          structural systems, being significantly
          likely to imminently collapse because of
          the moving or instability of the ground
          within the influence zone of the
          supporting ground within the sheer plane
          necessary for the purpose of supporting

6

> such building as defined within the
> Florida Building Code; or
>
> 5.   Damage occurring on or after October 15,
>      2005, that qualifies as "substantial
>      structural damage" as defined in the
>      Florida Building Code.

Fla. Stat. § 627.706(2)(k)(2011).

Here, Liberty Mutual requests that the Court apply the
2011 statutory language defining "structural damage" to this
case, even though the Policy's issuance date (February 27,
2011) predates the effective date of the Amendment (May 17,
2011).  The same argument has been advanced by Liberty Mutual
and other insurers in a host of cases that are factually and
procedurally similar to the instant case.  In each such case,
the court declined to apply the definition of "structural
damage" retroactively to an insurance policy issued prior to
May 17, 2011. See, e.g., Bay Farms Corp., 835 F. Supp. 2d at
1242-43 ("Bay Farms had a vested contractual right to coverage
for 'sinkhole loss' as that term was understood when the
Policy was issued . . . . Thus, the constitutional
prohibitions against retroactive application of legislation
impairing vested and contractual rights precludes the Court
from applying the newly adopted definition of 'structural
damage' to effectively extinguish Bay Farms' rights under the
Policy."); Garcia v. First Liberty Ins. Corp., No. 8:12-cv-

771-T-30TGW, 2012 U.S. Dist. LEXIS 154775, at *2 (M.D. Fla.
Oct. 29, 2012)("[T]he summary judgment motion should be denied
because retroactive application of the 2011 statutory
definition of 'structural damage' would impair the Garcias'
vested contractual rights under the policy."); Leon v. First
Liberty Ins. Corp., No. 8:12-cv-1613-T-30MAP, 2012 U.S. Dist.
LEXIS 158952, at *5 (M.D. Fla. Nov. 6, 2012)("[T]he Court
reaffirms that the 2011 amendment does not retroactively apply
to insurance policies that predate its enactment."); Sohl v.
Liberty Mut. Fire Ins. Co., No. 8:13-cv-200-T-17-AEP, 2013
U.S. Dist. LEXIS 95451, at *10 (M.D. Fla. July 9, 2013)("[T]he
definition of 'structural damage' introduced in the 2011
Amendments does not apply to the Sohl's policy [issued in
2010]; instead, the plain meaning of the phrase, 'damage to
the structure' shall apply."); Zawadzki v. Liberty Mut. Fire
Ins. Co., No. 8:12-cv-950-T-30MAP, 2012 U.S. Dist. LEXIS
119600 (M.D. Fla. Aug. 23, 2012)(declining to apply 2011
Amendments to an insurance policy issued on November 13, 2010
and "conclud[ing] that the phrase 'structural damage' should
be read according to its plain meaning . . . 'damage to the
structure.'")(citations omitted).

The Court echoes the reasoning of the courts above and
declines to apply the 2011 statutory definition of "structural

8

damage" to the Reillys' Policy.  As explained in Bay Farms, "the 2011 Amendment does more than just clarify a statutory definition – it adds a new definition of 'structural damage' that would substantially limit an insurance company's liability for damage resulting from sinkholes by narrowing the definition of a covered 'sinkhole loss.'" 835 F. Supp. 2d at 1237.  As the Bay Farms court found, there is no "clear evidence of legislative intent" to apply the statute retroactively, and even if such legislative intent existed, applying the 2011 Amendments would violate the parties' constitutional rights.  Id. at 1241-42.  Thus, this Court joins the other judges of this district who have declined to apply the 2011 Amendments retroactively.

Furthermore, the Court determines that the phrase "structural damage" should be read according to its plain meaning, which is "damage to the structure." See, e.g., Ayres v. USAA Casualty Insurance Co., No. 8:11-cv-816-T-24TGW, 2012 U.S. Dist. LEXIS 45932, at *10 (M.D. Fla. Apr. 2, 2012)("[T]his Court concludes, as a matter of law, that the undefined phrase, 'structural damage,' within the sinkhole loss endorsement means 'damage to the structure.'"); Bonitch v. Liberty Mut. Fire Ins. Co., No. 8:12-cv-770-T-26TBM (M.D. Fla. Nov. 9, 2012)("When allotting a plain meaning to a policy

9

term, courts are required to apply the plain and unambiguous meaning as understood by the 'man-on-the-street.'  The judges of this Court have repeatedly found that the plain meaning of the term 'structural damage' in pre-May 17, 2011, sinkhole policies which leave the term undefined, is 'damage to the structure.'")(citations omitted); <u>Garcia</u>, 2012 U.S. Dist. LEXIS 154775, at *2 ("The Court again concludes that the phrase 'structural damage' should be read according to its plain meaning . . . . Therefore, 'structural damage' is defined as damage to the structure.")(citations omitted).

Thus, as explained above, the Court denies Liberty Mutual's Motion for Summary Judgment.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant Liberty Mutual Fire Insurance Company's Motion for Summary Judgment (Doc. # 27) is **DENIED.**

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>20th</u> day of August, 2013.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record

10